UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NOVANT HEALTH PRESBYTERIAN HOSPITAL,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT F. KENNEDY, JR.,<br><br>*Defendant*. | Civil Action No. 23-1307 (TJK) |

**MEMORANDUM**

Novant Health Presbyterian Hospital, a Medicare provider that serves a population with a disproportionate share of low-income patients, alleges that Medicare under-reimbursed it for services it provided to those patients in Fiscal Year 2007. It appealed that reimbursement decision to the Provider Reimbursement Review Board, but the Board dismissed that appeal with prejudice for failure to comply with its procedural rules. So Novant Health sued the Secretary of Health and Human Services to seek judicial review of that dismissal, arguing that it was arbitrary and capricious. The parties now cross-move for summary judgment. Because the Court finds that the Board's decision was not arbitrary or capricious, it will deny Novant Health's motion for summary judgment, grant Defendant's, and enter judgment in Defendant's favor.

**I.    Background**

    **A.    Legal Background**

Medicare is a federal program that provides health insurance to elderly and disabled individuals. 42 U.S.C. § 426(a)–(b). It also "reimburses qualifying hospitals for services provided to eligible patients." *Cath. Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 916 (D.C. Cir. 2013). Reimbursement, however, is not based on the actual expenses that hospitals incur during

the treatment of eligible patients. Instead, providers "receive reimbursement based on prospectively determined national and regional rates." *Id.* These prospectively set rates are based on averages, so Congress created adjustments to compensate hospitals who care for expensive patients. *Id.* One such adjustment is the "disproportionate share hospital"—or DSH—adjustment, which permits greater reimbursement for hospitals who serve "low-income patients [that] are often in poorer health, and therefore costlier for hospitals to treat." *Id.*

This adjustment is not uniform for all hospitals that qualify. Instead, the size of the adjustment depends on the hospital's "disproportionate patient percentage," or DPP. 42 U.S.C. § 1395ww(d)(5)(F)(v); *Cath. Health*, 718 F.3d at 916. The DPP is an "indirect[] proxy" for the "percentage of low-income patients" that a hospital treats that is calculated by adding the sum of two congressionally created formulas. *Cath. Health*, 718 F.3d at 916. And the Centers for Medicare and Medicaid Services ("CMS") contracts with fiscal intermediaries, often "private insurance compan[ies]," who calculate "[a] hospital's adjustment . . . in the first instance." *Id.* at 917. Based on those calculations, the intermediaries are responsible for both "[d]etermining the amount of payments to be made to providers for covered services" and "[m]aking the payments." 42 C.F.R. § 421.100(a).

When a hospital disagrees with the reimbursement decision of an intermediary—which the parties call the "Medicare Administrative Contractor" ("MAC")—the hospital may appeal that decision to the Provider Reimbursement Review Board ("the Board"). *Cath. Health*, 718 F.3d at 918; 42 U.S.C. § 1395oo(a). Following administrative proceedings, the Board "may affirm, modify, or reverse the [MAC]'s decision." *Cath. Health*, 718 F.3d at 918.

Along with creating the Board, Congress vested it with certain regulatory authority, granting the Board "full power and authority to make rules and establish procedures, not inconsistent

2

with the provisions of this subchapter or regulations of the Secretary [of Health and Human Services], which are necessary or appropriate to carry out" its duties. 42 U.S.C. § 1395oo(e). Under that authority, the Board created procedural rules that govern its proceedings. *Mills Peninsula Health Servs. v. Fink*, No. 23-cv-2328 (LLA), 2025 WL 445189, at *1 (D.D.C. Feb. 10, 2025). These procedural rules, among other things, establish what information the parties must include in their briefs to the Board, called Final Position Papers ("FPPs"). Indeed, the regulations governing the Board mandate that "each position paper must set forth the relevant facts and arguments regarding . . . the merits of the provider's Medicare payment claims for each remaining issue." 42 C.F.R. § 405.1853(b)(2). The Board then refined that regulatory requirement through more specific Board Rules.[1] *See* Board Rules 25, 27. And when a hospital or other Medicare provider "fails to meet a filing deadline or other requirement established by the Board in a rule or order, the Board may," among other things, "[d]ismiss the appeal with prejudice." 42 C.F.R. § 405.1868(b), (b)(1).

**B.    Factual and Procedural Background**

On November 14, 2012, the MAC charged with reviewing Novant Health Presbyterian Hospital's ("Novant Health's") reimbursement request for Fiscal Year 2007 issued a Notice of Program Reimbursement ("NPR") for less than Novant Health wanted. ECF No. 27-7 at 1. So in January 2013, Novant Health appealed that NPR, raising nine issues for the Board's review. *Id.* By 2016, eight of the nine issues were no longer part of the dispute. *Id.* at 1–2. Thus, "the sole remaining issue" was what the parties originally called Issue 3: "Whether the MAC properly

---

[1] All references to the Board Rules refer to Version 3.1 of the Rules, the version in effect when Novant Health had to submit its FPP on August 17, 2022. *See* Provider Reimbursement Rev. Bd., *Provider Reimbursement Review Board Rules* (Version 3.1 2021), https://www.cms.gov/files/document/prior-prrb-rules-v-31-board-order-no-2-november-1-2021.pdf [hereinafter Board Rules].

3

excluded Medicaid eligible days from the [DSH] calculation." *Id.* at 2 (alteration in original). In short, Novant Health believed that the MAC incorrectly calculated its DPP by "fail[ing] to include all Medicaid eligible days" in that calculation. *Id.*

Then, in March 2017, Novant Health and the MAC filed a Partial Administrative Resolution, resolving half of Issue 3 before the case was submitted to the Board. ECF No. 27-14 at 2–3. In particular, Novant Health and the MAC agreed that the issue of "[w]hether the MAC properly excluded Medicaid eligible days from the Disproportionate Share Hospital (DSH) calculation . . . ha[d] two parts." *Id.* (emphasis omitted). The first part was resolved when the MAC agreed to include some 3,212 patient days in its calculations and is not at issue here. *Id.* at 3. The second part—involving days patients spent in Novant Health's Adolescent Psychiatric Unit—was left unresolved. *Id.* The MAC's view was that Novant Health's Adolescent Psychiatric Unit was "an excluded unit,"—that is, a hospital unit whose patient days are not included in the DSH calculation under 42 C.F.R. § 412.106(a)(1)(ii)—so it concluded that those days could not be "included in the payment of the DSH calculation." *Id.* At any rate, because this second issue was under consideration by the Board in two other appeals, the parties agreed to hold the case in abeyance. ECF No. 27-15 at 3.

The Board ended up dismissing those appeals on other grounds, so the parties' dispute remained unresolved. ECF No. 27-9 at 51–58. Accordingly, the Board set a hearing for November 15, 2022, to address the sole issue that remained before it. ECF No. 27-12 at 1. It also directed the parties to file FPPs before that hearing, setting out their positions "for [the] remaining issue." *Id.* at 1–2. The parties timely filed their FPPs. But in March 2023, rather than address the merits of Novant Health's appeal, the Board dismissed it with prejudice for failure to comply with the Board's procedural rules. ECF No. 27-7 at 14. According to the Board, Novant Health "failed to

4

brief the adolescent psychiatric day issue" as required by the relevant regulations and Board Rules. *Id.* And since Novant Health purportedly violated the Board's briefing rules, "the Board deem[ed] this unbriefed issue abandoned" and dismissed the appeal. *Id.* at 11, 14.

Novant Health now sues to challenge the Board's dismissal. ECF No. 1. It alleges that the Board's decision was arbitrary and capricious. *Id.* ¶ 29. So it seeks an order setting aside that decision and remanding the case to the Board for further proceedings. *Id.* at 8–9. Both parties now move for summary judgment. ECF Nos. 19, 20.

## II.     Legal Standard

Although both parties move for summary judgment, the ordinary summary-judgment standard does not apply. Plaintiff "seeks review of agency action under the APA," so the Court "sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). That is, the Court has no factfinding role because the case presents "a question of law." *See id.* It must ask "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Citizens for Resp. & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 145 (D.D.C. 2013). On top of its purely procedural requirements, the APA directs courts to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious . . . or otherwise not in accordance with law." 5 U.S.C. § 706(2).

When evaluating a claim that agency action is arbitrary or capricious, courts must ensure that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *FCC v. Fox Television Stations*, 556 U.S. 502, 513 (2009) (quotation omitted). That standard does not allow a court to "substitute its judgment for that of the agency." *Id.* (quotation omitted). In other words, the agency's "policy choices" are not up for debate—only the "explanation it has given." *Id.* at 530. That explanation must include a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.*

5

*Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation omitted). The agency must also consider all "important aspect[s] of the problem"—that is, those Congress considered relevant. *Id.*

**III.   Analysis**

Novant Health argues that the dismissal of its appeal on procedural grounds was arbitrary and capricious because it complied with the Board Rules. Defendant disagrees, maintaining that the Board was justified in dismissing Novant Health's appeal for violating those rules. The Court has little trouble agreeing with Defendant. Novant Health did not comply with the Board Rules that required it to brief the issue on appeal with far more specificity than it did, and the Board's decision to dismiss its appeal for that reason was not arbitrary and capricious.

The requirement that a provider must brief the issues before the Board with specificity is well-established. As noted above, the regulations governing the Board mandate that "each position paper must set forth the relevant facts and arguments regarding . . . the merits of the provider's Medicare payment claims for each remaining issue." 42 C.F.R. § 405.1853(b)(2). The Board, exercising its authority to promulgate procedural rules, further delineated that requirement in its Board Rules. Specifically, Board Rule 27 governs FPPs. Board Rule 27.1 begins by reaffirming that, for appeals filed before August 29, 2018—like the appeal here—"the final position paper [is] a required filing." Board Rule 27.2 then establishes what FPPs must include: "The final position paper should address each issue remaining in the appeal. The minimum requirements for the position paper narrative and exhibits are the same as those outlined for preliminary position papers at Rule 25." And according to that Rule, a Medicare provider's position paper must "provide a *fully* developed narrative" for the remaining issues that (1) "[s]tates the material facts that support the provider's claim"; (2) "[i]dentifies the controlling authority (e.g., statutes, regulations, policy, or case law) supporting the provider's position"; and (3) "[p]rovides a conclusion applying the material facts to the controlling authorities." Board Rule 25.1.1(B).

Novant Health's FPP did not include the "*fully* developed narrative" outlined above for the sole remaining issue in the appeal. Under the Partial Administrative Resolution, Novant Health agreed that the only remaining part of its appeal was whether its Adolescent Psychiatric Unit was an included unit such that the MAC had to include "Medicaid eligible days that occurred" in that unit in the DSH calculation. ECF No. 27-14 at 2–3. But in its FPP, Novant Health never addressed that issue. Instead, it began by generically asserting that it "disagree[d] with the MAC's calculation of the computation of the disproportionate patient percentage." ECF No. 27-11 at 10. It followed that with a brief paragraph citing cases holding that a MAC must include all Medicaid eligible days in its calculations, whether or not "a state actually renders payments of Medicaid benefits." *Id.*; *see also Jewish Hosp., Inc. v. Sec'y of Health & Hum. Servs.*, 19 F.3d 270, 274–75 (6th Cir. 1994). And it concluded by arguing that "[b]ased on the Listing of Medicaid Eligible days being sent under separate cover"—a listing Novant Health did not even send to the Board until after it had dismissed the appeal, ECF No. 27-1 at 16 n.18—the MAC's calculation "d[id] not reflect an accurate number of Medicaid eligible days." ECF No. 27-11 at 11.

Thus, Novant Health failed to comply with the Board Rules. It submitted no material facts about its Adolescent Psychiatric Unit or the number of days patients spent in that unit to support its claim. *See generally* ECF No. 27-11. It identified no controlling authority that supported its position that its Adolescent Psychiatric Unit was an "included" unit required to be included in the DSH calculation, and the cases it cited do not address that issue. *See, e.g.*, *Jewish Hosp.*, 19 F.3d at 274 (rejecting a regulation that "limit[ed] the calculation to those days for which a state actually renders payment to Medicaid benefits"). And it provided no conclusion applying any material facts to controlling authorities. It whiffed.

In response, Novant Health argues that the Board "create[ed] some fictional

7

characterization" of Issue 3 as "contain[ing] a *sub-issue* for Adolescent Psychiatric Unit day[s]." ECF No. 19-1 at 8. And it says that the Board Rules do not "require a provider to 'slice-and-dice' a traditional DSH appealed issue . . . into further component (sub) parts" that it must "identif[y] and brief[] in order to have a compliant Position Paper." *Id.* at 10, 20. According to Novant Health, since it addressed what it claims was the remaining issue—"[w]hether [the MAC's DSH calculation] properly include[d] all 'eligible' Medicaid days, regardless of whether such days were paid days," ECF No. 27-11 at 6—which "included but was not limited to such eligible days as adolescent psychiatric unit days," it did not need to specifically "mention" "adolescent psych days . . . in the position papers," ECF No. 19-1 at 15, 18.

This is nonsense. Novant Health signed the Partial Administrative Resolution, in which it characterized Issue 3 ("[w]hether the MAC properly excluded Medicaid eligible days from the Disproportionate Share Hospital (DSH) calculation") as having "2 parts," only one of which— involving Novant Health's Adolescent Psychiatric Unit—remained in dispute. ECF No. 27-14 at 2–3. So Novant Health itself told the Board that the only issue still live in the appeal was this "part"—or sub-issue—of the broader issue. *Id.* Its claim now that the Board created a "fictional characterization" of the issue on appeal is "hollow, disingenuous, [and] wholly without merit." ECF No. 19-1 at 8, 15.

More to the point, though—as explained above—the Board Rules required Novant Health to "provide a *fully* developed narrative" identifying and applying the relevant law to the facts to support its claim that the MAC undercounted Novant Health's Medicaid-eligible days. Board Rule 25.1.1(B). Novant Health's FPP did not do so. To review the MAC's decision: patient days are properly not counted when they come from "a unit of the hospital that is *excluded* (from [Medi- care's prospective payment system])." ECF No. 23-1 at 7; 42 C.F.R. § 412.106(a)(1)(ii). And the

8

MAC excluded Novant Health's Adolescent Psychiatric Unit patient days because it believed those days occurred in an excluded unit. ECF No. 27-14 at 3. Thus, to appeal the MAC's decision, Novant Health had to persuade the Board that its Adolescent Psychiatric Unit was an included unit.[2] *See* ECF No. 23-1 at 12–13. But Novant Health's FPP provided no facts, legal authorities, or arguments in support of its claim that the MAC's decision not to include the patient days spent in the Adolescent Psychiatric Unit was wrong. At best, the FPP argued and provided authority for the generic proposition that the MAC should correctly apply the law when calculating the DSH. But that is little more than saying that "the MAC was wrong." The relevant Board Rules require much more than that.

Because Novant Health did not comply with the Board Rules, the Board did not act arbitrarily and capriciously in dismissing its appeal without prejudice. The Medicare statute grants the Board authority to create "rules and establish procedures . . . which are necessary or appropriate to carry out" its functions. 42 U.S.C.§ 1395oo(e). And the regulations permit the Board to "[d]ismiss [a provider's] appeal with prejudice" when it "fails to meet a . . . requirement established by the Board in a rule or order." 42 C.F.R. § 405.1868(b), (b)(1); *see also* Board Rule 41.2 ("The Board may dismiss a case or an issue on its own motion . . . upon failure of the provider or group to comply with Board procedures . . . .").

Courts have repeatedly reaffirmed that the Board does not act arbitrarily and capriciously when it dismisses an appeal for failure to comply with procedural rules. *E.g.*, *Rapid City Reg'l Hosp. v. Sebelius*, 681 F. Supp. 2d 56, 60–61 (D.D.C. 2010). Specifically, "the Board has [the]

---

[2] Novant argues that it could not have the burden of proof on this issue because it would involve "the impossible task of proving a negative." ECF No. 23-1 at 13. But 42 C.F.R. § 405.1871(a)(3) places the "burden of production of evidence and burden of proof . . . that the provider is entitled to relief on the merits of the matter at issue" on the provider.

9

authority to dismiss [a] claim for failing to" "brief the issue on the merits as required by" the Board Rules. *Akron Gen. Med. Ctr. v. Azar*, 836 F. App'x 13, 15–16 (D.C. Cir. 2021); *see also UHI, Inc. v. Thompson*, 250 F.3d 993, 996 (6th Cir. 2001) ("[T]here is no evidence that the [Board] acted arbitrarily or capriciously in deciding to dismiss the plaintiff's appeal for failure to comply with procedural requirements.").

In this case, the Board dismissed Novant Health's appeal because it "failed to brief the adolescent psychiatric day issue in compliance with" the applicable regulations and Board Rules. ECF No. 27-7 at 14. As explained above, the Board was right. So the "rational connection between the facts found and the choice made" is plain, and the Board's decision to dismiss the appeal was not arbitrary, capricious, or otherwise contrary to law. *State Farm*, 463 U.S. at 43 (quotation omitted).

In the alternative, Novant Health argues that, even if it failed to meet the relevant Board Rules, the Board's decision to dismiss was still arbitrary and capricious because (1) the Board allegedly had "notice" that Novant Health "was pursing an adjustment in its appeal for" the Adolescent Psychiatric Unit days and (2) Novant Health's appeal was meritorious, insofar as the MAC failed to count days that should have been included in the DSH calculation. ECF No. 19-1 at 10, 20. These arguments border on the frivolous.

First, even assuming the Board knew what Novant Health claims, such notice is irrelevant. Under the authority discussed above, the Board has the power to dismiss an appeal for failure to comply with its Board Rules. *E.g.*, *Rapid City*, 681 F. Supp. 2d at 60–61; 42 C.F.R. § 405.1868(b), (b)(1). The reason for these rules is so the Board does not have "to hunt around in the record" for the provider's arguments. *High Country Home Health, Inc. v. Thompson*, 359 F.3d 1307, 1313 (10th Cir. 2004). The Board does not have to accept the "other submissions by [Novant Health]

as a substitute for the [final] position paper." *Rapid City*, 681 F. Supp. 2d at 61.  Plaintiff has provided no authority suggesting that the Board acts arbitrarily or capriciously when it dismisses an appeal for failure to submit an adequate FPP despite being aware of the gist of the argument that the provider was pursuing on appeal.

Second, the merits of Novant Health's appeal are also irrelevant to whether the Board acted arbitrarily and capriciously.  Novant Health appears to argue that the Board's procedural decision was improper because, on the merits, the MAC was wrong to exclude "1,435 adolescent psych days [that] should have rightfully been included in the" DSH calculation.  ECF No. 19-1 at 20.  Unsurprisingly, Novant Health again provides no authority supporting this argument.  How can it be arbitrary and capricious for the Board to dismiss an appeal for failing to submit an adequate FPP—the document that would allow it to assess the merits of the appeal—on the grounds that the Board somehow should have known the appeal was meritorious?  To ask the question is to answer it.  Thus, the merits have no role to play in this Court's review of the Board's decision to dismiss the appeal on procedural grounds. *Rapid City*, 681 F. Supp. 2d at 61.[3]

## IV. Conclusion

For all the above reasons, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 14, 2025

---

[3] At one point in its reply, Novant Health also argues that the Board abused its discretion by refusing to "reconsider its dismissal and reinstate the appeal." ECF No. 23-1 at 3.  Thus, Novant Health appears to argue that the Board's rejection of its Motion for Reinstatement violated the APA.  *See* ECF No. 27-1.  Whatever the merit of that claim, Novant Health's complaint alleges only that the Board's initial decision to dismiss was unlawful. ECF No. 1 ¶ 6.  The Board's decision to deny Novant Health's Motion for Reinstatement is not before the Court.